## J. P. CASSADA et al. v. LUCINDA CASSADA et al.

(Filed 21 September, 1949.)

#### 1. Limitations of Actions § 9—

In an action to establish a resulting trust instituted shortly after the guardian's death upon evidence that the lands were conveyed to the. guardian personally but were paid for with guardianship funds, it is error to enter nonsuit upon the plea of laches and the statutes of limitation upon evidence that the guardian remained in possession for over forty years and devised same to plaintiffs by will when defendants offer evidence that the guardian acknowledged the existence of the trust some six years prior to his death, and there is no evidence of disavowal of the trust or adversary holding during the life of the guardian.

#### 2. Trusts § 4b—

The fact that a guardian, in the sale of guardianship lands for reinvestment, purchased the new lands before the sale of the guardianship lands does not defeat the establishment of a resulting trust in the new lands when it appears from the guardian's annual report that the proceeds from the sale of the guardianship lands were disbursed in making payment on the balance due on the new lands secured by a mortgage or deed of trust.

Appeal by plaintiffs from *Moore, J.,* at April Term, 1949, of Bun-combe.

Civil action to impress a trust on land.

The record discloses that W. J. Cassada, late of Buncombe County, was twice married. The plaintiffs are children of his first wife who died in 1901. They claim through her. The defendants are the children of the second marriage and their mother, the surviving widow. They claim under the will of W. J. Cassada who died on 25 December, 1945.

In 1902 the plaintiffs inherited 78 acres of land in Madison County from their maternal grandfather. During the same year, W. J. Cassada had himself appointed guardian of his six minor children, plaintiffs herein. In August, 1903, the guardian applied for and obtained permission to sell the 78 acres of land belonging to his wards in Madison County and invested the proceeds in the "Judge West Farm" in Buncombe County.

In his annual report as guardian, filed 17 October, 1905, appears the following items: Receipts: . . . "To hand from sale of land $625.00"; Disbursements: . . . "By invested in the Judge West Farm 641.75."

It appears that W. J. Cassada took title individually to the "Judge West Farm" in March, 1903, and immediately executed a mortgage or deed of trust thereon to secure an indebtedness of $1,000, maturing 19 March, 1905. It is contended by the plaintiffs that he paid off this mortgage with moneys derived from the sale of their land, and that this was the guardian's method of investing their funds in the "Judge West Farm" as shown by his annual account filed in 1905.

W. J. Cassada lived on the "Judge West Farm" from the time of its purchase until his death in 1945. He left a will devising the farm to the defendants, so they allege in their answer.

In 1939, T. T. White tried to purchase the "Judge West Farm" from W. J. Cassada. He told him that he could not make a good title because his older children had an interest therein.

The defendants claim title by virtue of W. J. Cassada's "ownering" the land for more than 40 years and devising it to them. They also plead laches, and the three, six, seven, and twenty year statutes of limitation.

At the close of plaintiffs' evidence, there was judgment as in case of nonsuit, from which the plaintiffs appeal, assigning errors.

*George M. Pritchard and E. L. Loftin for plaintiffs, appellants.*
*James E. Rector for defendants, appellees.*

STACY, C. J. The question for decision is the sufficiency of the evidence, taken in its most favorable light for the plaintiffs, to survive the demurrer.

The plaintiffs having shown an admission of trust, *Dixon v. Dixon,* 145 N.C. 46, 58 S.E. 604, and no disavowal or adversary holding during the life of W. J. Cassada, *Weeks v. Weeks,* 40 N.C. 111, we think the evidence was such as to require its submission to the jury, or at least to put the defendants to their proof.

The fact that title was taken to the farm in Buncombe County prior to the sale of plaintiffs' land in Madison would not perforce destroy the acknowledgment made by the guardian in his 1905 report that he had invested funds belonging to his wards in the "Judge West Farm." On demurrer the inferences are to be taken in favor of the plaintiffs.

While Webster makes no reference to the verb "ownering" as used by the defendants, its meaning seems quite clear, if not entirely exact and precise. At any rate, it appears worthy of preservation as a bit of mountain lore.

There was error in entering judgment of nonsuit on the record as it now appears.

Reversed.